FSC SECURITIES CORPORATION, Marlis Gilbert, Integrated Financial Services, and Richard E. Connolly, Jr., Plaintiffs,

v.

Judy FREEL and Mirle Freel, Jr., Defendants.

No. Civ. 4–92–869.

United States District Court, D. Minnesota, Fourth Division.

Jan. 15, 1993.

Jeff I. Ross, Zelle & Larson, Minneapolis, MN, Richard A. Malm, Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, IA, for plaintiffs.

Linda J. Garofola, Reynolds, Motl, Sherwood & Wright, Helena, MT, for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiffs' motion to vacate an arbitration award and defendants' motion to confirm an arbitration award. The arbitration award will be confirmed.

FACTS

This action arises out of investment advice given to defendants Judy Freel and Mirle, Freel by plaintiff Marlis Gilbert, a financial planner. The Freels sought Gilbert's advice on investing $94,000 they had received from Judy Freel's parents. The money was intended, among other things, to help care for Judy Freel's developmentally disabled twin sister. One of the Freels' stated objectives was to protect the principal of their investments. Gilbert advised the Freels to invest in a variety of limited partnerships involved in commercial and residential property, equipment leasing, oil reserves, and medical stock. Gilbert also advised the Freels to take out a mortgage on their debt-free home and place the money into an investment. As a result of Gilbert's advice, the Freels lost approximately $81,000.

Gilbert was a member of the National Association of Securities Dealers (NASD), a self-regulatory organization established pursuant to 15 U.S.C. § 78o–3. The NASD subscribes to a code of arbitration which allows customers of NASD members to submit controversies to arbitration. The Freels filed an arbitration claim against Gilbert and plaintiffs FSC Securities Corp., Integrated Financial Services, and Richard E. Connolly, alleging that Gilbert, as agent for the other named parties, recommended unsuitable investments for them. The Freels sought $81,000 in loss of principal,

$56,000 in interest, and punitive damages.[1] All four respondents to the Freels' claim moved to dismiss the claim under NASD Code of Arbitration § 15, which provides:

> No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

The respondents claimed that much of the Freels' claim was barred by section 15 and the applicable statutes of limitation,[2] because four of the six investments on which the claim was based were purchased more than six years before the Freels filed their claim in May 1991. NASD arbitration staff denied the motion to dismiss, but stated that the respondents could raise it again before the arbitration panel. After the arbitration panel was appointed, respondents renewed their motion to dismiss; the panel denied the motion without explanation prior to the hearing date. At the hearing, respondents again moved to dismiss; the motion was fully argued on the record, and the arbitrators denied it once again, holding that the panel had jurisdiction over claims relating to all six investments. After a two-day hearing on the merits of the claim, respondents reiterated their motion to dismiss. Approximately one month after the hearing, the panel issued an award in favor of the Freels. The panel denied respondents' motion to dismiss, and awarded the Freels $122,421 plus costs.[3]

The respondents—plaintiffs in this action—commenced this suit under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* They seek to vacate the award, arguing that the arbitrators exceeded their powers by rendering an award on claims not eligible for submission under NASD § 15 and that the arbitrators' award was made in manifest disregard of the law. The Freels seek confirmation of the award, as well as an award of prejudgment interest, costs and attorneys' fees.

## DISCUSSION

### I. *Whether the Arbitrators Exceeded Their Authority*

■ Judicial review of an arbitration award is extremely limited. A court may disturb an arbitration award only on grounds set forth in the FAA. The United States Court of Appeals for the Eighth Circuit has held that by its express terms, the FAA allows a reviewing court to alter or vacate an award only if the arbitration process was seriously flawed, the arbitrators exceeded their power, or the arbitrators made a simple formal, descriptive, or mathematical error. *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743 (8th Cir.), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986) (citing 9 U.S.C. §§ 10, 11). Plaintiffs contend that in the instant case, the arbitration award must be vacated under 9 U.S.C. § 10(a)(4) because the arbitrators exceeded their powers by passing on claims that were time-barred under NASD § 15.

■ Plaintiffs' argument has two parts. Plaintiffs first argue that section 15 is jurisdictional in nature—that is, that it defines the disputes that the parties have agreed to submit to arbitration. Whether a given dispute is subject to arbitration is generally a question for the court, not the arbitrator, to determine. *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 647, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Thus, plaintiffs argue, the Court need give no deference to the arbitrators' interpretation of section 15, but must construe the section independently. The second part of plaintiffs' argument goes to how the Court should interpret section 15. They assert that the section

---

**1.** The Freels also sought treble damages under the Racketeer Influenced and Corrupt Organizations Act, but later withdrew this claim.

**2.** They also raised various other defenses, none of which are relevant to this proceeding.

**3.** The original arbitration award was subsequently amended and an enlarged award issued on December 18, 1992. The amendments are not material to the issues presented in this proceeding.

acts as an absolute bar to arbitration claims brought more than six years after the claimant purchased the securities at issue. Because four of the securities at issue here were purchased more than six years before the Freels brought their arbitration claim, plaintiffs assert that any claims arising from those investments were outside the arbitration panel's jurisdiction, and the award based on them must be vacated.

In response, defendants assert that section 15 is not a jurisdictional limitation, but a procedural one. They point out that it is for the arbitrator to decide whether an issue is procedurally arbitrable; the arbitrator's decision on procedural issues is accorded even more deference than the arbitrator's substantive determinations. *Stroh Container*, 783 F.2d at 748–49. Thus, defendants contend that the arbitrators' determination that their claim was timely submitted must stand. In addition, defendants dispute plaintiffs' reading of section 15, arguing that the six-year limitations period commences not when the securities are purchased, but when the purchaser discovers the wrongdoing upon which the claim is based.

In support of their argument that NASD § 15 is jurisdictional, plaintiffs rely primarily on *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir.1992). In *Sorrells*, three customers of a brokerage firm brought an arbitration claim against the firm and one of its stockbrokers, seeking to recover on losses from several investments which had been made more than six years earlier. The brokerage firm and stockbroker moved to dismiss the claim under NASD § 15. Without explicitly ruling on the section 15 argument, the arbitrators found in favor of the Sorrells. The district court vacated the award, holding that the claims were untimely under section 15.[4] The court based its holding on *Paine-Webber, Inc. v. Farnam*, 870 F.2d 1286 (7th Cir.1989), which had stated that section 15 was an eligibility requirement that must be met in order for a claim to be

arbitrable. An eligibility requirement, the court reasoned, did not act as a statute of limitations, but went to the very power of the arbitrators. Since the Sorrells' claims were based on investments that were more than six years old, the district court concluded that the arbitrators lacked subject matter jurisdiction over the claims, and had exceeded their power in ruling on them.

Reaffirming its position in *Farnam*, the United States Court of Appeals for the Seventh Circuit upheld the vacation of the award, holding that NASD § 15 is an eligibility requirement that bars from arbitration claims based upon investments that are more than six years old. The Sorrells argued that in their case, section 15's six-year limitations period should be tolled, because the broker had fraudulently concealed the facts necessary for the Sorrells to discover their cause of action; the court rejected this argument, reasoning that because section 15 was an eligibility requirement and not a statute of limitations, the doctrine of equitable tolling was inapplicable. The court also rejected the argument that the interpretation of section 15 was for the arbitrators, noting that it is the function of courts, and not arbitrators, to define the limits of arbitral jurisdiction.

Defendants attempt to distinguish *Sorrells* on the ground that the arbitrators in *Sorrells*, unlike the arbitrators here, did not initially rule on the section 15 issue. This distinction, however, is irrelevant, given the Seventh Circuit's holding that the interpretation of section 15 is for the courts. In the Court's view, *Sorrells* is directly on point and, if followed, would require vacation of the arbitration award in this case. The Court declines, however, to follow *Sorrells*.

Two circuits in addition to the Seventh have construed NASD § 15 or identical language from other arbitration codes. The United States Court of Appeals for the Third Circuit adopted the Seventh Circuit's interpretation of section 15 in *Paine-*

---

**4.** The district court first remanded the case to allow the arbitrators to rule on the section 15 issue; the arbitrators then issued an order stating that the section 15 motion had been considered and denied at the time the award was entered.

*Webber, Inc. v. Hartmann,* 921 F.2d 507 (3d Cir.1990). The issue in *Hartmann* was whether section 603 of the New York Stock Exchange's arbitration code, which is identical to NASD § 15, acted as a substantive bar to arbitration or a procedural limitation subject to the arbitrator's jurisdiction. Relying in part on the Seventh Circuit's holding in *Farnam,* the *Hartmann* court held that section 603 was not merely a procedural requirement governing the initiation of arbitrable disputes, but was a substantive limitation on the agreement to arbitrate.

The United States Court of Appeals for the Fourth Circuit, however, appears to view NASD § 15 differently. The Fourth Circuit considered section 15 in *Miller v. Prudential Bache Securities, Inc.,* 884 F.2d 128 (4th Cir.1989). In *Miller,* an investor sought to vacate an arbitration award dismissing her claims against a brokerage firm. The investor asserted that the arbitration panel had exceeded its authority by applying a state statute of limitations rather than the six-year period provided for in section 15. The court rejected this argument, holding that because the interpretation and application of section 15 was an issue for the arbitrators, their resolution of the issue would not be overturned, even if it were erroneous. *Miller,* 884 F.2d at 130.

■ The Court agrees with the *Miller* court that section 15 is a procedural provision to be interpreted by the arbitrators rather than a substantive limitation on arbitrability to be interpreted by the court. The distinction between procedural and substantive arbitrability has its roots in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The *Wiley* Court stated,

> Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

*Wiley,* 376 U.S. at 557, 84 S.Ct. at 918. The rule of deference to an arbitrator's procedural determinations "is founded on the recognition that (1) procedural questions are often intertwined with the merits of the dispute and (2) the reservation of procedural issues for the courts provides an opportunity for serious delay and duplication of effort." *Stroh Container,* 783 F.2d at 748–49 (citing *Wiley,* 376 U.S. at 556–58, 84 S.Ct. at 917–19). Applying *Wiley,* numerous courts have held that time limitation clauses in arbitration agreements are procedural limitations, not substantive bars. *Hartmann,* 921 F.2d at 512 (citing cases). Indeed, the *Hartmann* dissent criticized the majority for going against that line of authority to elevate "a time limitation provision, which is at most a defense to a claim, to the same level as a limitation imposed upon the subject matter of the agreement to arbitrate." *Hartmann,* 921 F.2d at 515 (Sloviter, J., dissenting).

The Eighth Circuit is among those that have read time limitations as procedural rather than substantive.[5] The Eighth Circuit considered the effect of a time limitation clause in *Automotive, Petroleum and Allied Industries v. Town and Country Ford,* 709 F.2d 509 (8th Cir.1983). In that case, the plaintiff union sought an order requiring the defendant to submit a discharge grievance to arbitration. The district court held that the union's failure to submit a complaint to the employer within five days of the discharge, as required by the collective bargaining agreement, barred arbitration. The appellate court reversed, holding that "[u]nder *Wiley,* the district court's role is limited to the determination of whether the parties are obligated to submit the 'subject matter' of a dispute to arbitration." *Automotive, Petroleum,* 709 F.2d at 514. Once the district court determined that the subject matter of the dispute—that is, the discharge of an employee—was arbitrable, the court was required to order arbitration and let the arbitrator determine whether the union had complied

---

5. The Seventh Circuit apparently reads time limitations as substantive. The *Sorrells* court noted that its decision was consistent with a previous case holding that it was for the district court to determine whether a request for arbitration was timely. *Sorrells,* 957 F.2d at 514 (citing *Robbins v. Chipman Trucking, Inc.,* 866 F.2d 899 (7th Cir.1988)).

with the time limitations set forth in the agreement.

In the instant case, the subject matter of disputes arbitrable under the NASD Code is set forth not in section 15, but in section 1. That section, titled "Matters Eligible for Submission," provides:

> This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association ...
>
> (1) between or among members;
>
> (2) between or among members and public customers, or others; and
>
> (3) between or among members....

NASD § 1. By its terms, section 1 delineates the matters that the parties have agreed to submit to arbitration. In contrast, section 15, titled "Time Limitation Upon Submission," sets forth the procedure that must be followed if a claimant is to obtain relief for an arbitrable dispute. Under *Automotive, Petroleum,* this Court's role is limited to determining whether the subject matter of the instant dispute falls within NASD § 1; the parties do not dispute that it does. That decided, it was for the arbitrators to determine whether the Freels complied with the time limitations of section 15.

---

**6.** Defendants have submitted a July 26, 1991 letter from an NASD legal assistant, stating the NASD takes precisely that view of section 15. The letter states in relevant part:

> It has been determined that the purchase date is not the event or occurrence that gave rise to this dispute. Also, Section 15 does not refer specifically to the purchase date as the time that the six year limitation begins to run. Therefore, it is equally appropriate that the discovery by the claimant be treated as the occurrence or event giving rise to the dispute.

Def.'s Ex. C (Letter from Sara Giambona, NASD Legal Ass't, to Theodore F. Brill). In determining that section 15 was a substantive eligibility provision and not a statute of limitations, the *Farnam* and *Sorrells* courts relied on a letter from an NASD staff attorney stating that the NASD will not process a claim that falls wholly outside the six-year period. *Farnam,* 870 F.2d at 1292; *Sorrells,* 957 F.2d at 512. It may be that the NASD itself has taken conflicting positions with regard to section 15. In any event, the NASD's interpretation of section 15 is not binding on this Court.

Reading section 15 as a procedural limitation to be interpreted by the arbitrator is particularly appropriate given the broad language of the section. Contrary to plaintiffs' assertion, the language of section 15 does not clearly indicate that the six-year limitations period commences on the date of purchase; rather, it measures the six-year period from "the *occurrence or event* giving rise to the act or dispute, claim or controversy." NASD § 15 (emphasis added). The "occurrence or event" triggering the claim could be the date of purchase; it could just as plausibly be some other occurrence or event.[6] Requiring courts to determine the point at which the six-year time limitation commenced would not only entangle courts in the merits of arbitrated disputes, but would provide an opportunity for delay and duplication of effort. These are precisely the results that the principle of deference to an arbitrator's procedural determinations was designed to prevent.

Because NASD § 15 is a procedural limitation under *Automotive, Petroleum,* the arbitration panel's interpretation of the provision must be accorded deference.[7] As noted above, the deference owed to an arbitrator's decision on procedural matters is even greater than that owed to an arbitrator's substantive decisions. *Stroh Con-*

---

**7.** Even if section 15 were read to define the substantive arbitrability of a dispute, the arbitration panel's determination would be entitled to deference. While the general rule is that the issue of substantive arbitrability is for the district court, that rule does not hold where the parties have agreed to commit the issue to the arbitrator. *AT & T Technologies, Inc.,* 475 U.S. at 647, 106 S.Ct. at 1418. The NASD Code of Arbitration provides:

> The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code which interpretation shall be final and binding upon the parties.

NASD § 35. By its express terms, section 35 commits the interpretation of all sections, including section 15, to the arbitrators. *But see, Sorrells,* 957 F.2d at 514 n. 6 (holding that section 35 is not a clear and unmistakable expression of the parties' intent to have the arbitrators determine substantive arbitrability).

*tainer,* 783 F.2d at 749. Therefore, even if the arbitrators erred in their application or interpretation of the provision, there would be no grounds for vacating the award.

## II. *Whether the Arbitration Award was Made in Manifest Disregard of the Law*

As an alternative to their argument that the arbitrators exceeded their power in issuing the award, plaintiffs argue that the award should be vacated because it was made in manifest disregard of the law. Specifically, plaintiffs assert that portions of the Freels' claim were clearly barred by state and federal statutes of limitation, that the arbitrators were apprised of that fact, and that the arbitrators nonetheless proceeded to adjudicate the claim.

■ Although manifest disregard of the law is not a statutory basis for vacating an award under the FAA, it was recognized as a possible ground for vacating an award in *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953). The Eighth Circuit, however, has on two occasions explicitly refused to adopt the manifest disregard standard, holding that even if it were a valid basis for vacating an award, the arbitrator did not exhibit manifest disregard for the law. *Marshall v. Green Giant Co.,* 942 F.2d 539, 550 (8th Cir.1991); *Stroh Container,* 783 F.2d at 750. The same reasoning applies in the instant case.

The *Green Giant* court described the manifest disregard standard as follows:

Manifest disregard of the law exists when the arbitrator commits an error that was "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing

legal principle but decides to ignore or pay no attention to it." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986). "[T]here must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." *O.R. Secs. v. Professional Planning Assoc.,* 857 F.2d 742, 747 (11th Cir.1988).

*Green Giant,* 942 F.2d at 550. This is an extremely high standard, but plaintiffs assert that it has been met here because they presented the arbitrators with the law regarding their statute of limitations defenses, and the arbitrators did not follow it.

The record supports plaintiffs' assertion that they presented the arbitrators with the law regarding their defenses; both sides presented written and oral arguments on the statute of limitations issue. The record does not, however, contain any indication that the arbitrators disregarded the law in determining that the Freels' claims were not time-barred. Neither the arbitrators' decision nor their statements at the hearing set forth their analysis of the statute of limitations issue. Where the arbitrators' decision does not clearly delineate the law applied or the reasoning underlying a decision, it cannot be assumed that the arbitrators "identified applicable law and proceeded to reach a contrary position in spite of it. Nor does the absence of express reasoning by the arbitrators support the conclusion that they disregarded the law." *Stroh Container,* 783 F.2d at 750.

At most, plaintiffs have established that the arbitrators misunderstood or misapplied the law.[8] Mere error or misunderstanding, however, will not satisfy the manifest disregard standard. *Green Giant,* 942 F.2d at 550. Plaintiffs have pointed to nothing in the record to support their manifest disregard claim, other than the result obtained. Because there is no show-

---

**8.** The Court is not convinced that plaintiffs have in fact established a misunderstanding or misapplication of the law. Plaintiffs assert, among other things, that the Freels' claims were barred by Iowa's five-year statute of limitations on common-law fraud actions. Iowa Code § 614.1. Under Iowa law, a statute of limitations may be tolled where the plaintiff establishes fraudulent concealment. *Woods v. Schmitt,* 439 N.W.2d

855 (Iowa 1989). Iowa also applies the discovery rule to determine when a cause of action accrues in cases where the injured party is unaware of the injury and its cause. *Scott v. Sioux City,* 432 N.W.2d 144 (Iowa 1988); *Husker News v. Mahaska State Bank,* 460 N.W.2d 476 (Iowa 1990). Both of these theories were urged by the Freels; it was for the arbitrators to decide whether the facts supported either theory.

ing in the record that the arbitrators knew the law and expressly disregarded it, the arbitration award could not be vacated even if the Court were to adopt the manifest disregard standard.

III. *Whether the Freels are Entitled to Prejudgment Interest, Costs, and Attorneys' Fees*

 The Freels have asked the Court to award them prejudgment interest on the arbitration award, as well as the costs and attorneys' fees incurred in this action. In support of their request for prejudgment interest, the Freels rely on *Stroh Container,* in which the court held that prejudgment interest should be granted unless exceptional circumstances exist that would make the award inequitable. *Stroh Container,* 783 F.2d at 752. Whether the opposing party acted in good or bad faith in challenging the arbitration award is not dispositive on the issue of prejudgment interest. Rather, where the opposing party has had the use of money to which the claimant is legally entitled, an award of prejudgment interest is generally required to prevent unjust enrichment. *Id.*

The Court concludes that the Freels are entitled to an award of prejudgment interest under *Stroh Container.* During this action, plaintiffs have had the use of the money awarded to the Freels. Requiring them to pay the Freels prejudgment interest will assure that the plaintiffs are not unjustly enriched. Plaintiffs do not argue that the Freels are not entitled to prejudgment interest, but assert that the Freels' motion for interest is moot in light of NASD § 41(h), which provides that an award shall bear interest from the date it is issued if the award is the subject of a motion to vacate that is denied. However, in the Court's view, section 41 does not moot the Freels' request, but merely provides an alternative ground for granting prejudgment interest.

While the Freels are entitled to prejudgment interest, they are not entitled to an award of attorneys' fees. The Freels assert that they are entitled to fees because plaintiffs' attempt to vacate the award was not well-grounded in fact or warranted by Eighth Circuit authority, and

was interposed for the purpose of delay. The Freels do not cite any legal authority for their fee request. In any event, no award of fees is warranted. Plaintiffs' challenge to the arbitration award was not frivolous, but was based upon existing Seventh Circuit law; nor does it appear that it was interposed merely for delay. Therefore, the Freels' request for attorneys' fees will be denied. Finally, regarding costs, the Court notes that as the prevailing parties, the Freels are entitled to an award of costs to the extent allowed by Federal Rule of Civil Procedure 54.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. plaintiffs' motion to vacate the arbitration award is denied;

2. defendants' motion to confirm the arbitration award is granted; and

3. defendants are entitled to prejudgment interest and costs in the amount allowed by law.

LET JUDGMENT BE ENTERED ACCORDINGLY.